[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16936
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00466-MCR-CJK

MICHAEL A. EVANS,

Plaintiff - Appellant,

versus

TERRY L. RHODES,
Executive Director,
FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR
VEHICLES,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 25, 2018)

Before JULIE CARNES, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Michael Evans, proceeding *pro se*, appeals the district court's grant of summary judgment on his 42 U.S.C. § 1983 complaint in favor of Terry Rhodes, in her official capacity as the Executive Director of the Florida Department of Highway Safety and Motor Vehicles (the "Department"). Evans argues that summary judgment was inappropriate because the Department suspended his driver's license without due process of law. After careful review, we affirm.

## I.     BACKGROUND

Evans was convicted in Florida of possession of an open container of alcohol and of marijuana. As a result, he was ordered to pay court costs and fees totaling over $1,000. When Evans failed to pay the court costs, the Department sent him an "order of license revocation, suspension, or cancellation" (the "Order"), explaining that Evans was required to pay his criminal court costs or his driver's license would be suspended pursuant to Florida Statutes § 322.245.

Under § 322.245, when the Department receives notice that a person licensed to operate a motor vehicle in Florida has failed to pay financial obligations for a criminal offense, the Department must suspend his driver's license. Fla. Stat. § 322.245(5)(a). The Department is required to notify the individual of the suspension either by mail or personal delivery. *Id.* § 322.251(1). The suspension

2

takes effect 20 days after the Department mails the notice. *Id.* § 322.251(2). Post-suspension review may be sought by filing a petition for writ of certiorari in the circuit court in the county in which the individual resides. *Id.* § 322.31. In addition, the Department must reinstate a person's driving privileges if the person provides an affidavit stating either that he entered into a written agreement for the payment of the financial obligation through a payment plan or that a court entered an order granting relief and ordering reinstatement of the license. *Id.* § 322.245(5)(b).

Evans submitted such an affidavit, stating that he had entered into an agreed-upon payment plan. He subsequently failed to pay the required clerk-assessed amount under the payment plan, however, and was issued another notice of non-compliance. After being issued this second notice, Evans failed to regain compliance, and his license was suspended.

Evans filed his *pro se* amended complaint, alleging that he had been deprived of due process of law because the Department had suspended his driver's license without affording him a pre-suspension hearing. The Department filed a motion to dismiss and attached exhibits to the motion, including the docket sheet for Evans's state criminal case, his official driving record, the Order that was sent to him, and his affidavit to reinstate his driver's license.

3

The magistrate judge notified both parties that the motion to dismiss would be treated as a motion for summary judgment, instructing Evans to respond to the motion by attaching affidavits or other supporting documentary evidence to demonstrate a genuine issue of material fact. Evans filed a cross-motion for summary judgment but did not attach any affidavits or supporting documents to his motion.

The magistrate judge issued a Report and Recommendation ("R&R") recommending that the district court grant the motion for summary judgment because Evans had not been deprived of due process of law. The district court adopted the R&R and granted the motion for summary judgment. Evans then filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e); the district court denied the motion. This is Evans's appeal.

## II.    STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

We address, as a preliminary matter, Evans's argument that the district court erred in converting the Department's motion to dismiss into a motion for summary

judgment.  The Federal Rules of Civil Procedure provide that a motion to dismiss shall be treated as a motion for summary judgment if the movant presents matters outside the pleadings.  Fed. R. Civ. P. 12(d).  When a district court converts a motion to dismiss into one for summary judgment, the court is required to give "notice to the parties and an opportunity for mutual discovery."  *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014).  These requirements were met here:  the motion presented matters outside the pleadings, and the magistrate judge provided notice to both parties and an opportunity for mutual discovery.  The magistrate judge thus did not err in converting the motion to dismiss into a motion for summary judgment.

Evans next argues that Florida Statutes § 322.245 is unconstitutional because it allowed the Department to suspend his driver's license for failure to pay court costs without affording him a pre-suspension hearing, in violation of the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a claim for a violation of procedural due process under § 1983, a claimant must allege three elements:  (1) that he was deprived of a constitutionally-protected liberty or property interest, (2) through state action, (3) as a result of constitutionally-inadequate process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232

5

(11th Cir. 2003). A driver's license is a constitutionally-protected property interest, *Dixon v. Love*, 431 U.S. 105, 112 (1977), and it is undisputed that the suspension of Evans's driver's license involved state action. We thus consider whether the procedure used was constitutionally adequate.

To determine whether procedures used to deprive a property interest are constitutionally adequate, this Court must apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Specifically, we balance (1) the private interest that will be affected by the official action, (2) the risk that the procedures used will cause an erroneous deprivation of such interest and the probable value of additional procedural safeguards, and (3) the government's interest, including the administrative burdens that any additional procedural safeguards would entail. *Id.*

In *Dixon*, the Supreme Court applied the *Mathews* test to determine whether an Illinois law that permitted the state to suspend or revoke a driver's license without a preliminary hearing was constitutional. *Dixon*, 431 U.S. at 112-15.[1] In analyzing the first factor, the private interest involved, the Supreme Court noted that although persons have a property interest in their driver's licenses, such an

---

[1] The statute at issue in *Dixon* allowed for revocation or suspension if the driver's conduct fell into one of 18 statutorily enumerated categories, including "three moving traffic offenses within a 12-month period" and being "repeatedly convicted of offenses against laws and ordinances regulating the movement of traffic, to a degree which indicates the lack of ability to exercise ordinary and reasonable care in the safe operation of a motor vehicle or disrespect for the traffic laws and the safety of other persons upon the highway." 431 U.S. at 107-08.

interest was not "so great as to require us to depart from the ordinary principle . . . that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 113 (internal quotation marks omitted). As for the second factor, in *Dixon* the Court held that the risk of erroneous deprivation in the absence of a preliminary hearing was not great because suspension decisions were "automatic" based on previous traffic offenses (the validity of which were undisputed) and involved little administrative discretion. Additional procedural safeguards therefore were unnecessary. *Id.* at 113-14. Third, the Court held that the substantial government interest in administrative efficiency would be obstructed by requiring preliminary hearings in every case and that the state also had an important public interest in keeping the roads safe and free of those "unable or unwilling to respect traffic rules." *Id.* at 114-15. The Supreme Court thus determined that the Illinois statute was not unconstitutional.

As in *Dixon*, first, the property interest of which Evans was deprived when the Department suspended his license was not so essential as to require a pre-suspension evidentiary hearing.[2] Second, Evans suffered no substantial risk of erroneous deprivation because the statutory scheme, like that in *Dixon*, allows little possibility for administrative discretion: the Department must suspend the license

---

[2] Evans also asserts that the statute does not provide for an immediate post-suspension hearing, but, as noted above, post-suspension review may be sought by filing a petition for writ of certiorari in the circuit court in the county in which the individual resides, Fla. Stat. § 322.31.

upon notice from the clerk of failure to pay court costs. Like Dixon, Evans has not challenged the factual basis for his suspension; rather, he asserts that he should have received a preliminary hearing to evaluate his financial hardship. Importantly, Evans does not argue that the court failed to evaluate his ability to pay or denied him procedural due process when the criminal court costs initially were imposed. In addition, the Florida statute provides for notice of suspension and for reinstatement of the license if the person agrees to a payment plan or, alternatively, if a court enters an order granting relief and ordering reinstatement. Thus, it is unlikely that further procedures would provide more protection from erroneous deprivation.

Third, the government has a significant interest that is protected by the statute: ensuring that defendants comply with their legal obligations in criminal cases. As in *Dixon*, requiring pre-suspension hearings would create a substantial administrative burden on the state. To be fair, the statute at issue in *Dixon* suspended the driver's licenses of individuals with multiple traffic offenses. Thus, the state's interest in keeping those individuals off the road was linked more directly to the suspension than the state's interest here, where the statute provides for suspension of the driver's licenses of individuals who fail to pay court costs associated with various non-traffic criminal offenses. Nevertheless, the balance of the factors weighs in favor of constitutionality.

8

In support of his due process argument, Evans cites to *Bell v. Burson*, 402 U.S. 535 (1971), and *Mackey v. Montrym*, 443 U.S. 1 (1979).  Both cases are distinguishable.  In *Bell*, the Supreme Court held that Georgia's statute providing for suspension of the driver's license of an uninsured motorist involved in an accident unless he posted security for the amount of damages claimed by the aggrieved party, without a pre-suspension hearing for consideration of fault or responsibility for the accident, violated procedural due process.  *Bell*, 402 U.S. at 536, 542-43.  Unlike the statute in *Bell*, the Florida statute at issue suspends a driver's license only after an individual's conviction of a crime and failure to pay the associated fees assessed by the criminal court.  As we noted above, Evans does not argue that he was denied due process during these underlying proceedings.  Here, then, the person whose license is suspended pursuant to § 322.245 has been provided adequate process regarding responsibility for the conduct giving rise to the suspension that was not afforded to the person whose license was suspended under the statute in *Bell*.

In *Mackey*, the Supreme Court held that a Massachusetts statute requiring suspension of a driver's license for 90 days upon refusal to take a breath-analysis test, where the licensee was entitled to an immediate hearing after surrendering his license, did not violate due process.  *Mackey*, 443 U.S. at 3-4, 19.  Evans argues that the statute at issue in *Mackey* was upheld in large part because of the

9

immediate post-suspension hearing and that such a hearing is lacking from Florida's statutory scheme.  Florida law does provide for post-suspension review of a driver's license suspension, however.  *See* Fla. Stat. § 322.31.  Assuming, *arguendo*, that the post-suspension review is not "immediate," Evans's argument fails because the statutory schemes are materially different.  The *Mackey* statute, for example, suspended driver's licenses based upon the decisions of individual law enforcement officers.  The Florida statute, as explained above, leaves no room for such discretion.   Further, no underlying conviction was necessary to trigger suspension under the *Mackey* statute.  The instant statute, however, applies only when a person with a valid criminal conviction fails to pay the court costs imposed during his criminal court proceeding.  Thus, the statute provides procedural safeguards not available under the statute in *Mackey*.  We conclude that the procedures provided in Florida Statutes § 322.245 do not violate the Due Process Clause.[3]

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to the Department.

---

[3] In his notice of appeal, Evans also appealed the district court's denial of his Rule 59(e) motion to alter or amend the judgment.  Because Evans makes no argument about this issue in his brief, the issue is abandoned.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." (citation omitted)).

**AFFIRMED.**